FILED
2014 Sep-17  PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE  DIVISION

| | | |
|---|---|---|
| **ALLAN R. LAMBERT, an individual;** | ] | |
| **SHELLEY R. LAMBERT, an individual;** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CV-13-BE-1090-M** |
| | ] | |
| **FIRST FEDERAL MORTGAGE, a** | ] | |
| **domestic entity; FIRST FEDERAL** | ] | |
| **BANK, a domestic corp.; and** | ] | |
| **JPMORGAN CHASE BANK, N.A., a** | ] | |
| **foreign bank,** | ] | |
| | ] | |
| **Defendants.** | | |

## <u>MEMORANDUM OPINION</u>

This matter—asserting the violation of the Real Estate Settlement and Procedures Act (RESPA), the breach of a loan agreement, fraud and other torts related to the loan processing—comes before the court on the "Amended Motion for Summary Judgment by Defendant First Federal Bank" (doc. 16) and "Defendant First Federal Bank's Motion to Strike in Reply to Plaintiffs' Response to First Federal's Motion for Summary Judgment" (doc. 19). The Plaintiffs responded (doc. 18) to the amended motion for summary judgment and accompanying brief, and Defendant First Federal's motion to strike represents its reply. Plaintiffs did not respond to the motion to strike.

For the reasons stated in this Memorandum Opinion, the court FINDS that the motion to strike is due to be DENIED; that the RESPA claims set forth in Count IV are due to be DISMISSED WITH PREJUDICE; and that, as to the remaining claims, the amended motion for

summary judgment is due to be GRANTED IN PART and DENIED IN PART.

More specifically, the court will GRANT the amended motion for summary judgment as to the breach of contract claim in Count III and will DENY it as to the tort claims in Counts I and II.

## I.  PROCEDURAL HISTORY

On May 5, 2013, Plaintiffs filed the instant suit in the Circuit Court of St. Clair County, Alabama, and Defendants removed it to this court on June 7, 2013.  First Federal Bank, also doing business as First Federal Mortgage, filed the current amended motion for summary judgment on February 26, 2014, and the motion to strike on April 2, 2014.

On April 16, 2014, the Plaintiffs and Defendant JPMorgan Chase Bank, N.A. filed a Pro Tanto Joint Stipulation of Dismissal (doc. 20), requesting that this court dismiss any and all claims among them.  Later that day, the court dismissed with prejudice Defendant JPMorgan Chase Bank, N.A. as a party Defendant.  (Doc. 21).

## II.  MOTION TO STRIKE

The first matter raised in the motion to strike is the form of the affidavits; Defendant asserts that although the affidavits state that each affiant was "duly sworn" and contain a notary's signature and date, they do not qualify as  sworn affidavits or declarations under penalty of perjury.  The court rejects that argument and FINDS that the form of the document comports with the requirements of Rule 56, and that the affidavits as a whole are not due to be stricken.

As to the argument that certain facts contained in the affidavits are inadmissible hearsay and violative of the statute of frauds, the court rejects those arguments. The Plaintiffs can testify to statements that First Federal employees made directly to them, and the allegations in this suit

are not limited to breach of a contract to lend money.  Accordingly, the court will DENY the motion to strike.

### III.  FACTS

In 2011, the Plaintiffs, Allan and Shelley Lambert, were in the process of buying a new home and selling their old one.  As part of that process, on September 1, 2011, they applied for a mortgage loan from Defendant, First Federal Bank, who also does business under the trade name First Federal Mortgage, subject to a guaranty by the United States Department of Agriculture.  The court will refer to these Defendants collectively as "First Federal."  On that date, the Lamberts provided DeDee Jenkins, a First Federal employee, with all of the required paperwork for the loan.  Jenkins told the Lamberts that First Federal needed to send the paperwork to the underwriter as soon as possible and that she would begin the process that afternoon.  The Lamberts understood that Jenkins would be sending the paperwork in the next day.  They did not make the finalization of the First Federal loan a contingency in their contract to sell their home.

The "Fees Worksheet" dated 8/29/2011—setting out the proposed loan amount, interest rate, fees, estimated funds needed to close and total estimated monthly payment—gives no closing date and contains the following statement:

> THIS IS NOT A GOOD FAITH ESTIMATE (GFE).  This "Fees Worksheet" is provided for informational purpose ONLY, to assist you in determining an estimate of cash that may be required to close and an estimate of your proposed monthly mortgage payment.  Actual charges may be more or less, and your transaction may not involve a fee for every item listed.

(Doc. 18-2, at 6).  The worksheet has the signature of Allan Lambert[1] but does not include

---

[1] The worksheet shows a loop under the signature of Allan Lambert, indicating that the signature of Shelley Lambert may be underneath his signature but cut-off by the copier.

signatures of representatives of First Federal or the USDA.

On September 12, 2011, Shelley Lambert received a call from Jenkins's assistant, Natalie, asking for the name of the Lambert's homeowners insurance carrier, and Mrs. Lambert provided the information.  When Mrs. Lambert responded that she thought First Federal had already sent in the paperwork, Natalie advised her that First Federal had not yet sent in the loan paperwork to the USDA, but that she would be sending it in.

Later that week, the Lamberts spoke to Jenkins who said the USDA had told her that as long as the USDA received the Lambert paperwork by September 15, 2011, the Lamberts should be able to close the loan by September 30, 2011.  First Federal entered into no written agreement with the Lamberts committing to a specific closing date for their loan.

During the week beginning Monday, September 26, 2011, the Lamberts began calling Jenkins to check on the status of the loan closing.  Jenkins advised them that First Federal had not yet received the paperwork back, but that First Federal staff members were checking on it every day, and would let the Lamberts know as soon as First Federal received it.

On Wednesday, September 28, 2011, Allan Lambert called First Federal to check on the paperwork, and Jenkins advised him that she had just learned that the paperwork had come in on Monday or Tuesday.  The Lamberts then called their real estate agent and scheduled a closing, presumably on their new hom, for Friday, September 30, 2011.

On that Friday afternoon, Allan Lambert called Jenkins, and she advised him that she had made a mistake; First Federal had *not* yet received the paperwork from the USDA.   However, she told the Lamberts they "would be fine with the PMI [Purchase Mortgage Insurance] and homestead exemption since [they] turned the paperwork in on September 13, 2011."  (Doc. 18-2,

4

at 3 ¶ 16; Doc. 18-3, at 3 ¶ 14).

Because the buyers of the Lambert home wanted to close on Tuesday, October 3, 2011, the Lamberts called Jenkins on Monday, October 3, 2011, and they set up an afternoon meeting. At that meeting, Jenkins told the Lamberts that First Federal had never submitted their paperwork to the USDA; it had only submitted their appraisal.

In light of that failure, Jenkins advised them that they would have to start the loan process over again, and she presented them with new October loan paperwork. Several times during the October 3 meeting, Jenkins stated, "I'm not going to take the blame for this because it's not my fault. People make mistakes. We are all human." (Doc. 18-3, at 3).

On October 13, 2011, First Federal extended a mortgage loan to the Lamberts in the original amount of $204,018.00, subject to a 90% guaranty by the USDA. This October loan reflects that the monthly payments increased $84.75 over the projected monthly payments on the August/September worksheet.

The Lamberts claim, however, that their monthly payments were $193.38 more than they would have been had they closed on September 30, 2011. To reach this number, they point to two increased monthly charges on the October worksheet—real estate taxes of $142.80 (with an increase of $67.80 over the prior month) and mortgage insurance (with an increase of $50.58 because the August/September worksheet included no monthly charge on the line listed for mortgage insurance)—without taking into account other October charges that decreased since August/September. The Lamberts state in their affidavits that the increased real estate taxes occurred because of their "failure to close by September 30, 2011 and claim our homestead exemption." (Doc. 18-2, at 4; Doc. 18-3, at 3). Although the Lamberts do not explain this

statement, presumably they refer to the October 1 property tax due date with the homestead exemption based on who owns the property and occupies it as the primary residence on the first day of the tax year. This homestead exemption problem would affect the property tax payments for one year. The Lamberts state that, because of the homestead exemption and Mr. Lambert's disability, their property taxes should have been zero, and thus, they were paying $142.80 per month more than they should have been, had they closed in September.

As to the mortgage insurance, the two worksheets included very different numbers. On the line listed as "USDA Guarantee" the August/September worksheet gave the amount as $7,253.89 with no monthly mortgage insurance payment. In contrast, the October worksheet gave the USDA Guarantee amount as $4,000.00 with a monthly mortgage insurance payment as $50.58. The court turns to First Federal's evidence to explain the $3,253.89 difference.

Barry Thompson, Vice President of First Federal, testified that any charges that appear to refer to mortgage insurance or PMI refer instead to the annual fee imposed by the USDA in consideration of its guaranty, which the USDA requires to be collected in monthly installments by the loan servicer. USDA sets this fee, not First Federal, and Thompson states that First Federal would not receive any portion of this fee. Although the parties do not fully explain the USDA loan structure, these loans apparently have a "no money down" financing feature, and generally require a 2% upfront fee paid at closing as well as an annual fee, collected in monthly installments.

In this case, the upfront fee for the October loan was $4,000.00, or 2% of the $200,000.00 new house purchase price. The $4,000.00 was added to the purchase price, making the loan amount $204,000.00. Then, as Thompson explained in his affidavit, the annual fee, was .3% of

the outstanding principal amount of the loan.  Although he does not present calculations, because the Lamberts financed the USDA upfront fee,  presumably the outstanding principal amount of the loan was $204,000.00, .3% of which would be $612.00, divided into 12 monthly payments of $51.00.  The line for "Mortgage Insurance" in the October worksheet shows a monthly payment of $50.58.

Thus, while Thompson generally explains the numbers in the October worksheet, he fails to explain the incomprehensible differences between those numbers versus the numbers in the August/September worksheet.

For example, the upfront fee for the August/September loan is listed as $7,253.89 on the worksheet, which is $3,253.89 over the $4,000.00 upfront fee (2% of the $200,000 purchase price) correctly listed on the October worksheet.  In addition to the 2 % upfront fee, the August/September worksheet reflects no monthly payments for the annual USDA fee, despite Thompson's testimony that the servicer of the loan must collect the annual .3% annual fee on the USDA's behalf, based on the then-outstanding principal balance of the loan.  The August/September worksheet reflects hazard insurance of $75.00 which would be decreased on the October worksheet to $56.65, with no explanation for the difference.  Also, the loan origination fee on the August/September worksheet reflects a .5% fee of $1,036.27 versus a .875% fee of $1,785.00 listed on the October worksheet, with no explanation of the difference.

The Lamberts also claim that, given Allan Lambert's disability, their taxes would have been zero had they been able to file their homestead exemption, so they assert that if they had been able to close on September 30, 2011 with a homestead exemption, their monthly payment would have been $193.38 less than the payment on the current loan.

Because the buyers of their home were threatening either to back out of the contract or sue the Lamberts, the Lamberts closed on the sale of their previous home even though they could not yet close on the loan to support the purchase of their new home.  Accordingly, they moved twice: they first moved out of their previous home and into Mrs. Lambert's sister's townhome, putting their belongings in temporary storage, and then, after their loan closed on the purchase of their new home, they moved into the new home.  They assert that this double move with storage fees cost them an extra $1,099.52.

## IV.  LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support

8

its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)   Substantive law determines which facts are material and which are irrelevant. *Id.* at 248.  In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  "The non-moving party need not present evidence in a form admissible at trial; however, he may not merely rest on his pleadings." *Graham v. State Farm Mut. Ins.* Co., 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Celotex,* 477 U.S. at 324).  If he does, or if the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented

through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Even if a district court "'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (*quoting Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)). The court should not disregard self-serving statements made in sworn testimony simply because they are self-serving at the summary judgment stage, and if the self-serving statements create a genuine issue of material fact, the court should deny summary judgment on that basis. *Id.* at 1253.

10

## V.  DISCUSSION

The amended motion for summary judgment addresses each of the counts in the Lamberts' Complaint: Count I asserting negligence, wantonness and/or willfulness in the processing of the Lamberts' loan; Count II asserting misrepresentation and fraud; Count III asserting breach of contract; and Count IV asserting violations of RESPA.  Because the discussion on the breach of contract claim is related to the ruling on the negligence claim, the court will address the breach of contract claim first.

### A.  Count III - Breach of Contract

In Count III, the Lamberts assert that First Federal offered them a loan without PMI in September of 2011, and that it breached its agreement by adding PMI on the loan contract and by failing to close the loan in September of 2011 as promised.  First Federal denies that any contract existed until the October 13, 2011 loan contract.

Under Alabama law, "[t]he elements of a breach-of-contract claim are: (1) the existence of a valid contract binding upon the parties in the action, (2) the plaintiff's own performance; (3) the defendant's nonperformance, or breach, and (4) damage.  The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." *Armstrong Bus. Servs., Inc. v. AmSouth Bank,* 817 So. 2d 665, 673 (Ala. 2001) (interior citations omitted).

In their brief, the Lamberts allege that they completed the application and provided the requisite documents, that the worksheet provided most of the contract details, including no monthly mortgage insurance fee, and that the agreement between the parties also included closing the loan on or before the end of September.  Two problems exist with this argument.

11

First, if the loan contract between the parties was indeed already completed at the first of September, when the Lamberts submitted all of their documents to First Federal, then logic suggests that they would not need to wait for First Federal to submit documents to the USDA and undergo a closing process with a contract signing.  In acknowledging that they would need to wait until the loan documents were returned and undergo the closing process, the Lamberts implicitly recognized that no valid, binding contract yet existed.

In any event, the evidence presented does not establish the essential elements of a contract before the October 13 loan closing; the application process is exactly what it purports to be—an application or offer to enter into a contract but not evidence of a valid, binding contract. *See Knight v. Alfa Life Ins. Corp.,* 504 So. 2d 1229, 1230 (Ala. 1992) ("An application ... is a mere offer which does not ripen into a contract unless, and until it is accepted ...").   The August/September worksheet upon which the Lamberts rely is called a "Fees Worksheet," not a contract, and clearly purports to be a preliminary statement "for information purposes ONLY" to help the Lamberts "in determining an estimate of cash that may be required to close and an estimate of your proposed monthly mortgage payment.  Actual charges may be more or less. . . ." (Doc. 18-2, at 6).  Accordingly, the court FINDS that no valid, binding contract existed between the Lamberts and First Federal before October 13, 2011.

A second problem with the Lamberts' argument is that, assuming *arguendo* that a contract existed before October 13, 2011—and the court just found that it did not—Alabama's statute of frauds barred any such contract.  Section 8-9-2 of the Alabama Code, known as the statute of frauds, requires certain agreements to be in writing, and provides in relevant part as follows:

> In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
> (1) Every agreement which, by its terms, is not to be performed within one year from the making thereof;
> ***
> (7) Every agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000;

Ala. Code § 8-9-2 (1975).  "[A]ny contract made by an agent without written authority is void if the contract itself is one that has to be in writing."  *Hight v. Byars,* 569 So. 2d 387, 388 (Ala. 1990) (per curiam).

In the instant case, the Lamberts are attempting to enforce what they claim to be a verbal contract with some terms reduced to writing via the August/September worksheet and at least one essential term *not in writing*: the term that the loan will close by the end of September. However, because the alleged contract is a consumer loan with a principal amount financed of more than $25,000, it is void if it is not in writing.   Further, the "contract" contains the signature of Allan Lambert, and possibly of Shelley Lambert, but does not contain the signature of a representative of First Federal, one of the parties charged with performing the "contract" and lending money to the Lamberts. Thus, *as an alternative ruling*, the court FINDS that, to the extent, if any, that a contract to lend money without mortgage insurance existed between First Federal and the Lamberts based on the August/September worksheet and the verbal agreement to close in September, that contract was void as violative of the statute of frauds.

For all of these reasons, the court FINDS that the amended motion for summary judgment is due to be GRANTED as to the breach of contract claim in Count III.

**B. Count I - Negligence, Wantonness and/or Willfulness**

    1.   Negligence

Count I asserts a claim of First Federal's negligence in the loan application process.  First Federal presents two arguments on this claim: that negligence based on a breach of duty created by contract is not recognized under Alabama law; and that the Lamberts assumed the risk as to their additional moving expenses and related damages.

To support its first argument, First Federal presents the decision of *Blake v. Bank of America, N.A.,* 845 F. Supp. 2d 1206 (M.D. Ala. 2012) for the proposition that "Alabama law does not recognize a tort-like cause of action for the breach of a duty created by contract, and a negligent failure to perform is but a breach of the contract."  The facts in that case reflected that a promissory note and mortgage contract existed between the parties, and that the bank's duty to perform arose out of the executed note and contract; the plaintiff asserted that the bank's negligent performance of its duties to collect payments and credit her mortgage account led to payments being misapplied and fees being charged to her account.  Quoting an Alabama case stating that "a negligent failure to perform a contract ... is but a breach of contract," the district court granted the motion to dismiss as to the claim for negligent mortgage servicing.  *Id.* at 1210 (quoting *Vines v. Crescent Transit Co.,* 85 So. 2d 836, 440 (Ala. 1956)).

In the instant case, however, the court disagrees that the duty in the instant case arose out of contract.  The negligence asserted is not negligence in performing the October loan contract; no allegations exist that First Federal did not perform its obligations stated in that written contract closed on October 13, 2011.  Rather, the negligence asserted relates to processing—or, more accurately, *failing* to process—the August/September loan application that First Federal

14

never submitted to the USDA, and that never resulted in a contract. Put another way, the duty asserted here is not the duty to perform an executed contract but the duty to use reasonable care in sending in the loan application when time was of the essence. The evidence reflects that Jenkins acknowledged the importance of timely sending in the documents and, viewing the evidence in the light most favorable to the Lamberts, Jenkins was aware of the October 1 deadline for claiming a homestead exemption. In light of this evidence, a genuine issue of material fact exists as to whether First Federal's failure to send in the Lamberts' loan application in September of 2011 constituted negligence.

In a related argument, First Federal proffered the case of *Holman v. Childersburg Bancorp., Inc.,* 852 So. 2d 691 (Ala. 2002) to support its position that where a tort action is based on a contract rendered unenforceable by the statute of frauds, the tort action is not viable; any other policy would allow a plaintiff to bring a tort action to circumvent the statute of frauds. In *Holman,* the parties entered into an oral agreement to release a tract of land from a mortgage lien. When the landowners sued the bank and others, alleging breach of contract, negligence, fraud, and other torts based on the oral contract, the circuit court granted the bank's motion for summary judgment asserting the statute of frauds barred those claims. The Supreme Court of Alabama affirmed, finding that the statute of frauds required all contracts for sale of land, including contracts for release of land, be in writing. In so ruling the Court stated: "As a general rule, '[i]f the proof of a promise or contract, *void under the statute of frauds,* is essential to maintain the action, there may be no recovery.'" *Id.* at 699 (quoting *Pacurib v. Villacruz,* 705 N.Y.S. 2d 819, 827 (N.Y. Civ. Ct. 1999)) (emphasis added). Because the breach of the oral contract "underlies *all* the tort claims," the court found the statute of frauds barred not only the

15

breach of contract claims but also the tort claims. *Id.* (emphasis in original).

In the instant case, the court reiterates that the duty asserted is not the duty to perform an oral contract to lend money and is not the duty to perform any other contract barred by the statute of frauds[2]. The duty asserted is to use reasonable care in timely sending in an application to the USDA when time was of the essence. Thus, *Holman* does not apply to bar negligence claims based on that duty; that duty does not arise out a contract barred by the statute of frauds.

First Federal's second argument is that the Lamberts assumed the risk as to their additional moving expenses and related damages when they proceeded with the process of selling their first home before closing on the loan for the new home and without making the sale of their house contingent on obtaining financing for the new home. The Lamberts respond that the issue of assumption of risk is one for the jury.

"The affirmative defense of assumption of risk is narrowly confined and is restricted by two requirements: 1) knowledge and appreciation by the plaintiff of the danger he is incurring; and 2) voluntary consent to bear that risk." *Kelton v. Gulf States Steel, Inc.,* 575 So. 2d 1054, 1055 (Ala. 1991). The resolution of the affirmative defense of assumption of risk is normally

---

[2] The Alabama Code section known as the "Statute of Frauds" provides: "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing: (1) Every agreement which, by its terms, is not to be performed within one year from the making thereof; (2) Every special promise by an executor or administrator to answer damages out of his own estate; (3) Every special promise to answer for the debt, default or miscarriage of another; (4) Every agreement, promise or undertaking made upon consideration of marriage, except mutual promises to marry; (5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller; (6) Every agreement, contract or promise to make a will or to devise or bequeath any real or personal property or right, title or interest therein; (7) Every agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000; (8) Notwithstanding Section  7-8-113, every agreement for the sale or purchase of securities other than through the facilities of a national stock exchange or of the over-the-counter securities market." Ala. Code § 8-9-2 (1975).

one for the jury, addressing whether a plaintiff "possessed the requisite appreciation of the risk and whether his actions, under the circumstances, amounted to a voluntary consent to bear the risk." *Id.* If the defendant who moves for summary judgment affirmatively raises the assumption of risk, the defendant "bears the burden of presenting substantial evidence indicating that the plaintiff assumed the risk that gave rise to the injury." *Ex parte Barran,* 730 So. 2d 203, 205 (Ala. 1998).

In the instant case, the court FINDS that genuine issues of material fact exist as to whether and when the Lamberts appreciated the risk and voluntarily consented to bear it. First Federal has not borne its burden at the summary judgment stage of presenting substantial evidence that the Lamberts assumed the risk giving rise to their injury. Accordingly, the court DENIES the amended motion for summary judgment as to the negligence claim.

Finally, First Federal argues that, to the extent the negligence claim remains viable after summary judgment, mental anguish is not properly recoverable where the mental anguish is not linked to actual physical injury or a zone of danger. The court acknowledges that, under Alabama law, "[d]amages for mental anguish are not recoverable for negligence except when the plaintiff has suffered a physical injury as a result of the negligent conduct or was placed in an immediate risk of physical injury by that conduct." *Brown v. First Federal Bank,* 95 So. 3d 803, 818 (Ala. Civ. App. 2012) (citing *Birmingham Coal & Coke Co. v. Johnson*, 10 So. 3d 993, 999 (Ala. 2008)). That limitation of damages for mental anguish applies to negligence claims but not to other tort claims such as wantonness. *Id.* The court will address the damages recoverable for any tort claims that remain after summary judgment at a later stage of this litigation.

2.   Wanton[3] and Willful Behavior

In Count I, the Lamberts also assert that First Federal acted willfully and wantonly in "failing to properly process their loan documents" knowing that "time was of the essence." (Doc. 1-1, at 11).

The Alabama Code's definition of wantonness is "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3) (1975).  The Alabama Supreme Court has defined wantonness as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Capstone Bldg. Corp.,* 96 So. 3d 77, 84 (11th Cir. 2012).  However, to prove wantonness, a plaintiff need not prove the defendant "entertained a specific design or intent to injure the plaintiff."  *Id.*

On the other hand, "[t]o constitute willful or intentional injury there must be a knowledge of the danger accompanied with a design or purpose to inflict injury, whether the act be one of commission or omission. . . ."  *Id.*

First Federal asserts that no evidence exists that it acted with knowledge or consciousness that any of its conduct would result in injury to the Lamberts nor does any evidence exist of its intent to injure the Lamberts.  The Lamberts responded that Jenkins, who had stressed to the

---

[3] The court acknowledges First Federal's argument in footnote 1 that a sister district court sitting in Alabama held in *Webb v. Ocwen Loan Servicing, LLC,* No. 11-732-KD-M, 2012 WL 5906729, at *7 (S.D. Ala. 2012) that pure economic loss was insufficient to state a claim for negligent or wanton servicing of a mortgage. Given that First Federal's argument was in a footnote, the court addresses that argument in a footnote of its own. The *Webb* case does hold that "under Alabama law, a cause of action for negligent servicing of a mortgage . . . cannot be maintained where the damages are economic, *i.e.* lost commissions" with no accompanying claim of physical injury or immediate risk of physical injury.  *Id.*  However, the instant case does not address servicing of a mortgage, and the court will not extend the *Webb* holding to negligent processing of a loan application.

Lamberts the importance of timely submitting the paperwork, represented certain facts to them that she knew or should have known were incorrect: the statement that the Lamberts would not have to pay mortgage insurance or monthly USDA fee payment when the USDA required the monthly payment; the statement that First Federal had already sent the loan paperwork to the USDA when it had not; the statement that First Federal was checking daily about the paperwork to be returned when the bank later acknowledged that it had never sent in the loan paperwork; the statement that First Federal had received the loan paperwork back from the USDA when it in fact had never sent in the paperwork to the USDA in the first place; and the statement on September 30 that because First Federal had sent in paperwork on September 13, 2011—when it had not—the Lamberts should be fine to apply the homestead exemption to the new loan.

 The court agrees with the Lamberts.  At the summary judgment stage, the court must view all facts in the light most favorable to the Lamberts, and, given their testimony about what Jenkins told them, genuine issues of material fact exist as to whether Jenkins's behavior was wanton or willful. Summary judgment is due to be DENIED as to the claims presented in Count I.

### C.  Count II - Misrepresentation and Fraud

 In First Federal's argument on the fraud claims in Count II, it argues that the alleged misrepresentations are mere promises to do something in the future, and thus, to proceed under these claims of promissory fraud, the Lamberts must present evidence that First Federal never intended to perform the promised actions.  Although First Federal points to allegations in the Complaint itself and one interrogatory answer, the Lamberts point to *evidence* presented in their affidavits.   The Lamberts correctly argue that the alleged misrepresentations as stated in the

affidavits did *not* involve a future act.  As discussed previously, the misrepresentations involved the following: the statement that the Lamberts would not have to pay mortgage insurance or monthly USDA fee payment when the USDA in fact required the monthly payment; the statement that First Federal had already sent the loan paperwork to the USDA when it had not; the statement that First Federal was checking daily about the paperwork to be returned when the bank later acknowledged that it had never sent in the loan paperwork; the statement that First Federal had received the loan paperwork back from the USDA when it in fact had never sent in the paperwork to the USDA in the first place; and the statement on September 30 that because First Federal had sent in paperwork on September 13, 2011—when it had not—the Lamberts should be fine to apply the homestead exemption to the new loan.  The court FINDS that these statements were about facts that existed at the time First Federal staff made these statements and were false, not promises to do something in the future.

Under Alabama statutory law, fraud is defined as "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party. . . ." Ala. Code § 6-5-101 (1975).

As the court has already found that these statements were false at the time they were made, the court must next determine whether they were material and whether the Lamberts acted upon them.   Given that the Lamberts were in the process of buying one house and selling another, that they had a buyer for their previous home who was anxious to move in and was threatening to back out of the purchase if the Lamberts delayed on move-in dates, and that the two-week delay in closing affected their ability to claim a homestead exemption for the next

year, a jury could find that the representations were material and that the Lamberts acted upon

them; at the very least, a genuine issue of material fact exists that those false statements were

material to the Lamberts and that they acted upon them.  Further, a genuine issue of material fact

exists as to whether First Federal acted mistakenly, recklessly without knowledge, or willfully to

deceive.  Accordingly, the court FINDS that the motion for summary judgment is due to be

DENIED as to the fraud claims in Count II.

### D.  Count IV - RESPA

In their responsive brief, the Lamberts "agree that the RESPA claim is due to be

dismissed against this Defendant."  (Pl.'s Br., Doc. 18, at 10).  Accordingly, the court FINDS that

Count IV's RESPA claim against First Federal is due to be DISMISSED WITH PREJUDICE.

## VI.  CONCLUSION

In sum, for the reasons stated above, the court FINDS that the motion to strike is due to

be DENIED; that the RESPA claim asserted in Count IV is due to be DISMISSED WITH

PREJUDICE; and further, that First Federal's amended motion for summary judgment is due to

be GRANTED IN PART and DENIED IN PART.

More specifically, the court FINDS as follows:

- As to claims for negligence, and wanton and willful conduct asserted in Count I, the

  amended motion for summary judgment is due to be DENIED;

- As to the claims for misrepresentation and fraud asserted in Count II, the amended motion

  for summary judgment is due to be DENIED;

- As to the claim for breach of contract asserted in Count III, the amended motion for

  summary judgment is due to be GRANTED, and the court will ENTER PARTIAL

SUMMARY JUDGMENT in favor of Defendant First Federal Bank and against the Plaintiffs.

The court will enter a separate Order consistent with this Memorandum Opinion, and will proceed to trial with the tort claims asserted in Counts I and II.

Dated this 17th day of August, 2014.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE